**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **JOSH JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:26-cv-00428-BL-SMD** |
| | ) | |
| **GRAY MEDIA GROUP, INC.,** | ) | |
| **D/B/A WSFA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## STATEMENT OF COUNTERCLAIMS

Defendant-Counterclaimant Gray Local Media Group, Inc. d/b/a WSFA[1] ("WSFA") states as follows as its counterclaims against Plaintiff-Counterclaim Defendant Josh Johnson ("Johnson"):

## INTRODUCTION

1. WSFA employed Johnson as a meteorologist for nearly eighteen years, during which time WSFA invested substantially in building his professional image, developing his on-air presence, and providing him with resources including advanced weather technology, professional conference allowances, and consistent salary increases.

[1] Gray Local Media Group, Inc. d/b/a WSFA was formerly known, and improperly named in this lawsuit, as Gray Media Group, Inc. d/b/a WSFA.

2. Throughout Johnson's employment, WSFA entered into successive employment agreements with Johnson. Each of those agreements contained provisions requiring Johnson to devote his full-time efforts to the business and affairs of WSFA, granting WSFA exclusive property rights in any scripts, videotapes, films, recordings, photographs, or other intellectual property created by Johnson using WSFA's time or resources, requiring Johnson to protect WSFA's confidential information and trade secrets, requiring Johnson to render exclusive media-related services to WSFA, and restricting Johnson from engaging in competitive activities. The most recent of these agreements was the News Personnel Employment Agreement executed on March 29, 2023 (Doc. 1-1, the "Agreement").

3. In addition to his salary, WSFA provided Johnson with substantial benefits and accommodations over the years, including a clothing allowance, yearly meteorology conference allowances, and regular schedule adjustments to accommodate Johnson's personal obligations, including coaching his stepson's football team, leaving early for family events, and caring for his aging mother.

4. During Johnson's employment, Johnson created as part of his job duties social media accounts for his use in connection with his role as Chief Meteorologist. The social media accounts include a YouTube channel, Facebook page, Instagram account, X (formerly Twitter) account, and TikTok account (collectively, "WSFA's Social Media Accounts"). WSFA's Social Media Accounts were created using

WSFA's time and resources. WSFA owns the intellectual property rights in content created using WSFA's time or resources.

5. In early 2026, Johnson advised WSFA that he would not be renewing his Agreement.

6. Upon information and belief, prior to advising WSFA of his upcoming departure, Johnson had already started planning to start his own business that would compete with WSFA for viewers in violation of his Agreement and to personally profit on the image that WSFA invested substantial time and resources in helping him build. This is evidenced by, among other things, Johnson registering the domain "joshjohnsonweather.com" in December 2025 and, based upon information and belief, opening a TikTok account in February 2026. Additionally, starting in December 2025 and continuing through the end of his employment, Johnson's activity increased drastically on WSFA's Social Media Accounts.

7. Upon the expiration of Johnson's Agreement, WSFA organized a farewell celebration recognizing his years of service, and wished him well. Johnson's last day of employment at WSFA was May 29, 2026.

8. Despite ending his employment with WSFA, Johnson maintains and operates WSFA's Social Media Accounts, which still contain a substantial amount of WSFA content including, but not limited to, videos featuring WSFA branding, WSFA equipment, and WSFA resources. Upon information and belief, Johnson has

monetized this content for himself personally without permission and in violation of company policy, the Agreement, and trademark law.

9. Joshjohnsonweather.com currently reads "launching soon," further signaling his intent to compete with WSFA in violation of his Agreement.

10. Through his actions, Johnson has breached, and continues to breach, his Agreement with WSFA, including the non-compete provisions, the exclusivity provisions, the confidentiality provisions, the property rights provisions, his duty of loyalty owed to WSFA during his employment, and trademark law.

**PARTIES, JURISDICTION, AND VENUE**

11. WSFA is a Delaware corporation with its principal place of business in Atlanta, Georgia.

12. Johnson is an adult citizen of the State of Alabama.

13. This Court has subject-matter jurisdiction over WSFA's counterclaims pursuant to 28 U.S.C. § 1331 because Count V arises under federal law, specifically the Lanham Act, 15 U.S.C. § 1114. This Court also has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because complete diversity of citizenship exists between WSFA and Johnson, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to WSFA's counterclaims occurred within this District.

## FACTUAL ALLEGATIONS

### I. Johnson Executed the Agreement as a Term and Condition of His Employment.

15. As a term and condition of his employment, Johnson executed the Agreement on March 29, 2023. (Doc. 1-1)

16. The Agreement required Johnson to "devote Employee's full-time efforts to the business and affairs of Employer" and prohibited Johnson from owning or having any interest in any entity where such ownership "may conflict with the full and faithful performance of Employee's duty to Employer, specifically including, but not limited to, any companies that produce or distribute video content." (Doc. 1-1, Attachment A, § 1(c)-(d))

17. Additionally, the Agreement granted WSFA exclusive property rights, providing that:

> [A]ny scripts, videotapes, films, recordings, photographs and any part thereof, in which Employee has been involved with Employer in any way, **shall remain the exclusive property of Employer, with Employee having no rights therein.**

(Doc. 1-1, Attachment A, § 8) (emphasis added).

18. The Agreement further provided:

> Employee acknowledges Employer as the sole and rightful owner of any "intellectual property," including but not limited to, any programs, inventions, copyright material, trademarks, tradenames, patents, and the like, which Employee may create, prepare or procure, alone or with others, during employment with Employer, where such creation, preparation or procurement involved the use of Employer's time or resources.

(Doc. 1-1, Attachment A, § 8)

19. The Agreement also required Johnson to render exclusive media-related services to WSFA:

> Employer shall have the exclusive right to Employee's performance of any media-related services and Employee shall not render any media-related services to any person or entity other than Employer, without the prior, written consent of Employer.

(Doc. 1-1, Attachment A, § 4(b))

20. The Agreement further contained confidentiality and non-disclosure provisions requiring Johnson to protect WSFA's proprietary information:

> Employee will not, for so long as the information remains confidential or a trade secret under applicable law, divulge, furnish or make accessible to anyone or appropriate for Employee's own use . . . any Confidential Information of the Station and its affiliated entities, which has been disclosed to Employee, or of which Employee became aware as a consequence of or through Employee's employment.

(Doc. 1-1, Attachment A, § 9(a))

21. Per the terms of the Agreement, "Confidential Information" includes "business secrets, or business opportunities of the Station or its affiliated entities, including without limitation, marketing, political, advertising and promotional ideas and strategies, marketing surveys and analyses, technology, budgets, business plans, customer or supplier lists, research or financial, purchasing, planning data or information." (Doc. 1-1, Attachment A, § 9(a))

22. The Agreement contained a restrictive covenant prohibiting Johnson, while employed and for one year following termination, from performing "any activities that are the same as or similar to the Services" or authorizing the use of his name, image, voice, or likeness "for or on behalf of any Competitor" competing with WSFA for viewers or advertisers within the thirteen-county Designated Market Area ("DMA"). (Doc. 1-1, Attachment A, § 11(a))

## II. Johnson Planned to Start a Competing Business While Still Employed at WSFA.

23. Johnson operates and still maintains WSFA's Social Media Accounts. WSFA's Social Media Accounts directly leverage the professional identity and viewer recognition Johnson built during his employment at WSFA.

24. WSFA's Social Media Accounts were originally established using WSFA's time and resources. Following his departure, Johnson has continued to operate and maintain WSFA's Social Media Accounts as though they are his personal property.

25. Beginning in December 2025, Johnson's YouTube activity increased dramatically. From December 2025 through his last day of employment on May 29, 2026, Johnson posted over 40 videos to YouTube after having posted no videos since February 2023.[2] At least 10 of the 40 videos contain WSFA name, logo, and related branding elements.

26. Johnson also drastically increased the frequency with which he posted "shorts." From December 1, 2025 through May 29, 2026, Johnson posted 91 "shorts" to the YouTube channel. Prior to that, Johnson had posted only 10 "shorts" going back to 2021.

27. As further evidence of Johnson's intent to create a business that competes with WSFA, Johnson increased his posting of weather-related content across WSFA's Social Media Accounts. Upon information and belief, he did not start posting content to TikTok until February 2026.

28. On December 10, 2025, while still employed at WSFA, Johnson registered the domain "joshjohnsonweather.com."

29. Johnson also recently removed WSFA's Digital Content Manager from administrator access to WSFA's Social Media Accounts, despite WSFA's ownership

[2] The term "videos" applies specifically to the content categorized on YouTube as "videos." Johnson also posted "live videos," a separate category to YouTube, sporadically throughout his employment. Johnson's frequency of posting live videos also increased starting in or around December 2025.

of those accounts and WSFA's property rights in content created using WSFA's time and resources.

30. WSFA's Social Media Accounts operated by Johnson deliver River Region weather content to the same audience WSFA serves. WSFA itself operates social media accounts and a YouTube channel. By operating WSFA's Social Media Accounts, Johnson is directly competing with WSFA's digital operations within the DMA.

31. WSFA's Social Media Accounts being operated and maintained by Johnson contain videos featuring WSFA branding, WSFA equipment, WSFA studios, WSFA graphics, WSFA trademarks, and other WSFA resources. Under the Agreement, such materials are WSFA's exclusive property.

32. Upon information and belief, Johnson has monetized this content for his personal benefit.

33. Johnson's dramatic increase in social media and YouTube activity during the final months of his employment, combined with his registration of the domain "joshjohnsonweather.com" on December 10, 2025, demonstrates that he was building a competing business while still employed at WSFA, in violation of his duty of loyalty and the exclusivity provisions of the Agreement.

34. As of the date of this filing, Johnson's website states: "Launching Soon."

## CAUSES OF ACTION

## COUNT I

## BREACH OF CONTRACT - NON-COMPETE

35. WSFA incorporates by reference the allegations set forth in Paragraphs 1 through 34 above as though fully set forth herein.

36. The Agreement contains a valid and enforceable restrictive covenant. Section 11(a) of Attachment A to the Agreement provides that Johnson, "while employed by Employer and for the one-year period following termination of employment," shall not:

> [P]erform any activities that are the same as or similar to the Services . . . [or] authorize or permit the use of his/her name, image, voice, sobriquet, biography, recorded performance, picture, portrait, caricature, electrical transcription, tape, digitized image, animated image, audio file, graphic file, text file, compact disc recording, web page or other recording or likeness for or on behalf of any Competitor without the express prior written consent of Employer.

(See Agreement, Attachment A, § 11(a))

37. The Agreement defines "Services" as "such duties and responsibilities that Employer may, in its sole discretion, assign to Employee" (See Agreement, Attachment A, § 1(a)). Johnson's duties as Chief Meteorologist included delivering weather content within the DMA.

38. The Agreement defines a "Competitor" as:

> [A]ny person or entity that competes with the Station for viewers or advertisers, within the thirteen (13) county area included in the Designated Market Area (DMA) for the Station, as currently defined by Nielsen Media Research.

(See Agreement, Attachment A, § 11(a))

39. WSFA's Social Media Accounts operated and maintained by Johnson specifically deliver River Region weather content within the DMA to the same audience WSFA serves. WSFA itself operates a YouTube channel and social media accounts and competes for viewers and advertisers on those platforms. By maintaining and operating the WSFA Social Media Accounts, Johnson is directly competing with WSFA's digital operations within the DMA.

40. By creating, maintaining, and operating WSFA's Social Media Accounts, registering the domain "joshjohnsonweather.com" on December 10, 2025, and dramatically increasing his posting activity beginning in December 2025, Johnson has breached, is breaching, and/or intends to breach his Agreement with WSFA.

41. Johnson's actions have proximately caused, are causing, and, if not stopped by this Court, will continue to cause, immediate, great, and irreparable injury to WSFA.

42. As a direct and proximate result of Johnson's breach of the restrictive covenant, WSFA has suffered, will continue to suffer, and/or may potentially suffer

damages that are not fully ascertainable at this time, but which WSFA will show more specifically at trial.

**COUNT II**

**BREACH OF CONTRACT - PROPERTY RIGHTS**

43. WSFA incorporates by reference the allegations set forth in Paragraphs 1 through 34 above as though fully set forth herein.

44. Section 8 of Attachment A to the Agreement grants WSFA exclusive property rights, providing that:

> [A]ny scripts, videotapes, films, recordings, photographs and any part thereof, in which Employee has been involved with Employer in any way, shall remain the exclusive property of Employer, with Employee having no rights therein.

45. The Agreement further provides that:

> Employee acknowledges Employer as the sole and rightful owner of any "intellectual property," including but not limited to, any programs, inventions, copyright material, trademarks, tradenames, patents, and the like, which Employee may create, prepare or procure, alone or with others, during employment with Employer, where such creation, preparation or procurement involved the use of Employer's time or resources.

(See Agreement, Attachment A, § 8)

46. WSFA's Social Media Accounts operated and maintained by Johnson contain videos and other content created during Johnson's employment at WSFA

using WSFA's time, resources, equipment, studios, graphics, and branding. Such materials are WSFA's exclusive property under the Agreement.

47. By utilizing and retaining WSFA content, monetizing that content for his personal benefit, and removing WSFA from administrator access to WSFA's Social Media Accounts, Johnson has breached, is breaching, and continues to breach the property rights provisions of the Agreement.

48. Johnson's actions have proximately caused, are causing, and, if not stopped by this Court, will continue to cause, immediate, great, and irreparable injury to WSFA.

49. As a direct and proximate result of Johnson's breach of the property rights provisions, WSFA has suffered, will continue to suffer, and/or may potentially suffer damages that are not fully ascertainable at this time, but which WSFA will show more specifically at trial.

**COUNT III**

**CONVERSION**

50. WSFA incorporates by reference the allegations set forth in Paragraphs 1 through 34 above as though fully set forth herein.

51. WSFA owns the exclusive property rights to any scripts, videotapes, films, recordings, photographs, and other intellectual property created by Johnson during his employment using WSFA's time or resources.

52. Through the actions alleged herein, Johnson has converted, is converting, intended to convert, and/or intends to convert WSFA's property, requiring WSFA to expend time and resources to effectuate the return of its property.

53. Johnson was not authorized to retain WSFA's property for personal use or gain. WSFA's Social Media Accounts that Johnson maintains and operates contain WSFA-branded content, including videos created using WSFA's equipment, studios, graphics, and other resources, all of which constitute WSFA's property.

54. Johnson has wrongfully retained WSFA's property and, upon information and belief, has monetized WSFA's property for his own personal benefit without authorization.

55. Johnson's actions have proximately caused, are causing, and, if not stopped by this Court, will continue to cause, immediate, great, and irreparable injury to WSFA.

56. As a direct and proximate result of Johnson's conversion of WSFA's property, WSFA has suffered, will continue to suffer, and/or may potentially suffer damages that are not fully ascertainable at this time, but which WSFA will show more specifically at trial.

## COUNT IV

## BREACH OF DUTY OF LOYALTY

57. WSFA incorporates by reference the allegations set forth in Paragraphs 1 through 34 above as though fully set forth herein.

58. As an employee of WSFA, Johnson owed WSFA a duty of loyalty throughout the duration of his employment.

59. Section 1(c) of Attachment A to the Agreement required Johnson to:

> [P]erform and discharge faithfully, diligently and to the best of Employee's ability such duties and responsibilities and shall devote Employee's full-time efforts to the business and affairs of Employer.

60. Section 1(d) of Attachment A to the Agreement further prohibited Johnson from:

> [O]wn[ing] or hav[ing] any interest in any entity where such ownership may conflict with the full and faithful performance of Employee's duty to Employer, specifically including, but not limited to, any companies that produce or distribute video content.

(See Agreement, Attachment A, § 1(d))

61. Upon information and belief, beginning in December 2025, while still employed at WSFA, Johnson dramatically increased his social media and YouTube activity, posting over 40 videos to YouTube after having posted no videos since February 2023. At least 10 of these videos contain WSFA's name, logo, and related

branding elements. Johnson also posted 91 "shorts" during this period, compared to only 10 "shorts" posted from 2021 to December 2025.

62. Johnson's dramatic increase in social media and YouTube activity during the final months of his employment, combined with his registration of the domain "joshjohnsonweather.com" on December 10, 2025 and, upon information and belief, establishing a TikTok account in February 2026, demonstrates that he was building a competing enterprise while still employed at WSFA, in violation of his duty of loyalty and the exclusivity provisions of the Agreement.

63. Johnson's actions have proximately caused, are causing, and, if not stopped by this Court, will continue to cause, immediate, great, and irreparable injury to WSFA.

64. As a direct and proximate result of Johnson's breach of his duty of loyalty, WSFA has suffered, will continue to suffer, and/or may potentially suffer damages that are not fully ascertainable at this time, but which WSFA will show more specifically at trial.

## COUNT V

## TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT

## (15 U.S.C. § 1114)

65. WSFA incorporates by reference the allegations set forth in Paragraphs 1 through 34 above as though fully set forth herein.

66. WSFA owns valid and legally protectable trademarks, including the WSFA name, logo, and related branding elements (collectively, the "WSFA Marks"), which have been used in commerce in connection with news and weather broadcasting services in the DMA. WSFA has invested substantial time, effort, and resources in developing and promoting the WSFA Marks, which have acquired significant goodwill and consumer recognition.

67. WSFA's Social Media Accounts contain videos and other content prominently featuring the WSFA Marks, including WSFA branding, logos, graphics, and other proprietary identifying elements. Johnson's unauthorized continued use of the WSFA Marks following his departure is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Johnson's personal weather services are produced by, associated with, affiliated with, connected with, or have the sponsorship, endorsement, or approval of WSFA.

68. Johnson has used the WSFA Marks without authorization in connection with weather-related services in violation of 15 U.S.C. §§ 1114 and 1125(a). Johnson's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, as well as injury to WSFA's goodwill and reputation as symbolized by the WSFA Marks, for which WSFA has no adequate remedy at law.

69. Johnson's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the WSFA Marks to WSFA's great and irreparable harm. Johnson has caused and is likely to continue causing substantial injury to the public and to WSFA; therefore, WSFA is entitled to injunctive relief and to recover Johnson's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## RESERVATION OF RIGHTS

WSFA reserves the right to amend this pleading to add additional counterclaims against Johnson and additional parties after conducting discovery and/or a forensic examination of Johnson's digital content, social media activity, and monetization activities.

## PRAYER FOR RELIEF

WHEREFORE, Counter-Plaintiff Gray Local Media Group, Inc. d/b/a WSFA respectfully requests the following relief:

a. Judgment against Johnson for compensatory damages, punitive damages, and pre- and post-judgment interest;

b. A preliminary and permanent injunction enjoining Johnson from breaching the restrictive covenant provisions of the Agreement, including an order prohibiting Johnson from performing any activities that are the same as or similar to

the services he performed at WSFA, or authorizing the use of his name, image, voice, or likeness for or on behalf of any competitor, within the DMA for the one-year restricted period;

c. A preliminary and permanent injunction enjoining Johnson from using the WSFA Marks or any confusingly similar marks in connection with weather broadcasting or related services;

d. An order requiring Johnson to immediately remove all WSFA content, including all content bearing the WSFA Marks, from WSFA's Social Media Accounts and to return control of those accounts to WSFA;

e. An order requiring Johnson to restore WSFA's administrator access to WSFA's Social Media Accounts and to provide WSFA with adequate assurance that he no longer retains any of WSFA's intellectual property;

f. An order directing Johnson to submit to a forensic examination of his work and personal computers, tablets, cell phone, and other electronic storage devices to ensure the return of all WSFA property;

g. An order compelling Johnson to account for and disgorge to WSFA any and all profits attributable to his use of the WSFA Marks, and, to the extent Johnson's infringement is found to be willful, trebled damages up to three times the amount of actual damages or profits under 15 U.S.C. § 1117;

h. Attorneys' fees and costs incurred in prosecuting this action, including attorneys' fees recoverable under 15 U.S.C. § 1117 in exceptional cases; and

i. Such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted this 31st day of July, 2026.

*<u>/s/ David L. Warren, Jr.</u>*
David L. Warren, Jr. (ASB-7490-R75D)
Michael C. Guarino (ASB-0441-V18D)
Ogletree Deakins P.C.
420 20th Street North - Suite 1900
Birmingham, AL 35203
Telephone: 205-328-1900
Facsimile: 205-328-6000
david.warren@ogletree.com
michael.guarino@ogletree.com

Attorneys for WSFA

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of July, 2026, I electronically filed the foregoing with the Court's ECF system, which will send notification of such filing to the following at their e-mail address on file with the Court:

Caitlin E. Cobb
Christopher W. Weller
Capell & Howard, P.C.
150 South Perry Street (36104)
P.O. Box 2069
Montgomery, AL 36102-2069
Caitlin.Cobb@chlaw.com
Chris.Weller@chlaw.com

/s/ David L. Warren
Of Counsel